986 F.2d 1412
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
COMBINED PROPERTIES; Donald Bourassa; Dennis Galanis,
Plaintiffs-Appellants,
v.
AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, Defendant-Appellee.
 No. 92-2046.
 United States Court of Appeals,
Fourth Circuit.
 Argued: November 30, 1992
Decided: February 12, 1993
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CA-92-755-A)
 Argued: Joseph D. Tydings, Anderson, Kill, Olick & Oshinsky, Washington, D.C., for Appellants.
 Ralph N. Boccarosse, Jr., Siciliano, Ellis, Dyer & Boccarosse, Fairfax, Virginia, for Appellees.
 On Brief: Catherine J. Serafin, Andrew M.
 Reidy, John E. Menditto, Anderson, Kill, Olick & Oshinsky, Washington, D.C., for Appellants.
 E.D.Va.
 VACATED AND REMANDED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and MURNAGHAN and LUTTIG, Circuit Judges.
 PER CURIAM:
 
 
 1
 In this diversity action, filed in the Eastern District of Virginia, Appellants sought a declaration that they have a contractual right under their insurance policy with Appellee to recover fees and costs incurred by Appellants' selected counsel in defending a civil action against them. Applying Maryland law, the district court denied Appellants' motion for summary judgment and entered judgment in favor of Appellee. We vacate the district court's judgment and remand for further proceedings consistent with this opinion.
 
 
 2
 * American Manufacturers Mutual Insurance Company ("American") sold a general liability insurance policy to Combined Properties, Incorporated ("CPI"). This policy insured not only CPI, but also its executive officers Donald Bourassa and Dennis Galanis. Under the terms and conditions of the policy, American assumed the duty to defend any suit seeking damages against CPI for causes of action covered under the policy.
 
 
 3
 Subsequently, Bourassa and Galanis were named in a suit filed by one Carol Pittinger in the District of Columbia (the" Pittinger action"). Ms. Pittinger alleged seven counts: (1) sexual discrimination and sexual harassment; (2) intentional infliction of emotional distress; (3) negligent infliction of emotional distress; (4) invasion of privacy; (5) defamation; (6) negligent hiring and training of personnel; and (7) breach of contract to pay commissions. CPI informed American of the Pittinger action. American denied coverage under the policy for any of the counts in the Pittinger action except counts 4 and 5. American reserved its rights to dispute coverage as to counts 4 and 5, but pursuant to the policy American engaged at its expense an attorney to defend CPI in the entire cause of action. American advised CPI that CPI might want to engage its own attorney to co-defend the action, but that CPI would have to bear that expense.
 
 
 4
 CPI contended that a conflict of interest existed between CPI and any lawyer appointed by American because the insurer had denied coverage for five of the seven counts in the Pittinger action, and had reserved its rights to protest coverage as to the remaining two. Accordingly, CPI informed American of its intention to retain separate counsel and to have invoices for services rendered in connection with the Pittinger action submitted to American for payment. American responded that it would not pay any such invoices, and encouraged CPI to take advantage of American's appointed counsel.
 
 
 5
 CPI refused to allow American's counsel to participate in the Pittinger action. Instead, CPI filed an action for declaratory relief in the federal district court for the Eastern District of Virginia. CPI sought a declaration that, given the conflict of interest between itself and American, the policy between the parties obligated American to bear the cost of CPI's chosen counsel to defend the Pittinger action.
 
 
 6
 CPI moved for summary judgment. The district court determined that the substantive law to be applied in the diversity action before it was controlled by Virginia's choice of law principles. Noting that "the final binding act in this contract occurred in Maryland where American's agent countersigned the commercial policy" and that "both parties agree that Maryland law applies," Judge Hilton applied Maryland law. The district court found no conflict of interest between CPI and American under Maryland law, and stated that any potential conflict of interest was not sufficient to warrant an obligation by American to pay the attorney's fees for CPI's chosen counsel. Accordingly, the district court denied CPI's motion for summary judgment and entered judgment in favor of American. CPI filed a motion for expedited appeal which was granted by this Court.
 
 II
 
 7
 The question before us is whether the district court properly applied Maryland law to determine whether American had an obligation to pay for CPI's chosen counsel under the circumstances of this case. It is undisputed, and we note at the outset, that Judge Hilton erred in stating that the parties had agreed that Maryland law applied to the case before him. Even so, Judge Hilton applied Maryland law only after analyzing Virginia's choice of law rules. We must decide whether the district court's decision to apply Maryland substantive law was appropriate under Virginia's choice of law rules.
 
 
 8
 In a diversity action filed in a federal district court for the Eastern District of Virginia, the state substantive law to be applied is determined by Virginia's choice of law principles. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); Chesapeake Supply & Equip. Co. v. J.I. Case Co., 700 F. Supp. 1415, 1416 (E.D. Va. 1988). Virginia's choice of law rules for contract interpretation issues mandate that it is the substantive law of the state where the contract at issue was made that governs. See Rossman v. State Farm Mut. Auto. Ins. Co., 832 F.2d 282 (4th Cir. 1987); Woodson v. Celina Mut. Ins. Co., 177 S.E.2d 610, 613 (Va. 1970). A contract is considered"made" at the place where the final act is done that is necessary to bind both parties. Chesapeake, 700 F. Supp. at 1417.
 
 
 9
 The district court held that Maryland law applied because the "final binding act in this contract occurred in Maryland where American's agent countersigned the commercial policy." CPI contends that because the countersignature was not necessary to make the policy effective, the district court erred in determining that the countersignature constituted the final act binding the parties.* The district court cited no authority for the proposition that the countersignature constituted the final binding act in this contract. It is unclear whether the court below believed this statement to be a finding of fact, or a conclusion of law. Based on this ambiguity, coupled with the district court's mistaken belief that the parties agreed that Maryland law applied, we reverse and vacate the judgment below. On remand, the district court should reexamine the significance of the countersignature as it bears on the choice of law issue in this case. The district court should then make a fresh determination of which state's law is properly applicable to this action. Finally, the district court should ascertain whether that state's law requires an insurer pay for its insured's chosen counsel under the facts of this case.
 
 VACATED AND REMANDED
 
 
 *
 CPI maintains that the final act necessary to make the policy binding was the unconditional delivery of the insurance policy from American's home office in Illinois to CPI in the District of Columbia. Numerous Virginia courts have held that delivery of a contract is the last act necessary to make a binding contract. See Hancock v. Smith, 90 F. Supp. 45, 49 (W.D. Va. 1950); Woodson, 177 S.E.2d at 615; Rose v. Travelers Indem. Co., 167 S.E.2d 339, 343 (Va. 1969). Thus if CPI is correct that the final act necessary to make this contract binding was the delivery of the policy from American's home office in Illinois, the law of Illinois would apply to this action