COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Chaney, Raphael and Callins
Argued at Richmond, Virginia


MELINDA NEWNAM MILLS

                                                    OPINION BY
v.      Record No. 1043-20-2      JUDGE DOMINIQUE A. CALLINS
                                                        MAY 9, 2023

ROBERT ALEXANDER MILLS


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Phillip L. Hairston, Judge

Eileen McNeil Newkirk (The McNeil Law Group, on briefs), for
appellant.

Benjamin R. Rand (Blackburn, Conte, Schilling & Click, P.C., on
brief), for appellee.


Robert Mills (husband) and Melinda Mills (wife) come before this Court once more to address issues related to their 2015 divorce. Both challenge the judgment of the trial court in exercising its jurisdiction to adjudicate the terms of a 2018 amendment to their property settlement agreement ("PSA") and in its allocation of attorney fees. Their primary issues are whether the trial court properly determined that the modification to their PSA was enforceable under the court's power to enforce the divorce decree; whether the trial court fully and properly directed the special commissioners to disburse the proceeds from the sale of the marital residence; and whether the trial court properly allocated attorney fees. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

BACKGROUND

## I. *The Marital Residence*

On July 19, 2012, husband and wife entered the PSA and signed the document in the presence of a notary public. The PSA established that husband and wife would continue to own the marital residence jointly after the final divorce decree. In Section 9.3, it also provided:

> The parties agree that unless the parties agree otherwise in writing, the Wife may continue to reside in and have exclusive use and possession of the marital residence until the youngest child begins attending college at which time the parties will decide the disposition of the property. If the parties cannot agree on a disposition at that time, the property shall be placed on the market for sale forthwith upon request of either party and the sales proceeds divided 50/50 or as the parties may otherwise agree in writing.

Section 13.5 of the PSA addressed modification and established that "The parties may modify the terms of [the PSA], but any such modification shall not be effective unless in writing and executed with the same formality as [the PSA]." About three years after the parties entered the PSA, the Circuit Court for the City of Richmond entered a final decree of divorce between husband and wife. That final decree affirmed, ratified, and incorporated the PSA.

On August 10, 2015, following their divorce, husband and wife entered a written, notarized modification to the PSA. That agreement granted wife the marital residence as her sole and separate property and granted wife 100% of the net proceeds from the sale of the marital property.

In 2018, husband filed a "motion to reinstate the matter" to reopen the parties' case to enforce Section 9.3 of the PSA, which motion the trial court granted. Husband also moved for the trial court to appoint a special commissioner to sell the marital residence. Wife objected to husband's motion and moved for appointment of a special commissioner to execute a deed transferring title to wife in fee simple. Wife planned to sell the property after it was titled in her

name. On May 30, 2018, the trial court appointed both parties' counsel as co-special commissioners to sell the marital property and distribute the proceeds "pursuant to [the] court's forthcoming order upon a final determination of the enforceability of the parties' [PSA] and any modification thereto . . . ." The order also directed the commissioners to place the proceeds in escrow until "a final distribution of such assets may be made by [the trial court]." It provided that the non-prevailing party would pay all costs associated with the appointment of the special commissioners, "including any commission authorized by statute," unless otherwise directed by the trial court. The marital residence sold on July 24, 2018, resulting in net proceeds of $168,601.43.

On September 17, 2018, wife filed a motion for declaratory judgment asking the trial court to determine that the parties' modification to the PSA was valid and enforceable; determine each party's respective rights in the marital residence and sale proceeds; determine when those rights were established; and determine whether husband violated or infringed on wife's rights. Alternatively, wife asked the trial court to enter judgment against husband for breach of contract because husband's "refusal to execute the Deed transferring legal title of the marital residence to [wife] upon her request for the same constitutes a breach [of the PSA modification]." Wife asked the trial court to award her the full net proceeds from the sale of the marital residence and to award her attorney fees related to husband's breach, as well as a monetary judgment as reimbursement for any commission awarded to the special commissioners resulting from the sale of the marital residence.

The parties convened for a hearing on the motion for declaratory judgment on October 11, 2018. That transcript is not part of the record. By an order dated December 20, 2018, the trial court determined that it had subject matter jurisdiction over the matter, continued the matter, and ordered the parties to file additional briefings. Upon agreement of the parties, the trial court

- 3 -

ordered a distribution of $62,000 to wife from the escrow account holding the proceeds of the sale of the marital residence. The court referred the parties to a settlement conference, which was not successful.

The parties reconvened for another hearing on October 10, 2019, where the trial court heard arguments related to the declaratory judgment. The court found that the modification was a valid part of the PSA and therefore found that wife was entitled to 100% of the proceeds from the sale of the house. After that pronouncement, the court was unsure whether husband could present his affirmative defenses in a declaratory judgment action and requested that the parties brief the issue. Following the hearing, husband advised the trial court that he "would no longer seek to pursue any affirmative defenses."

The trial court entered a written order on January 30, 2020, granting wife's motion for declaratory judgment and finding that she was entitled to 100% of the proceeds from the sale of the marital estate. The court reserved ruling on attorney fees, awaiting further argument.

*II. Attorney Fees*

Under the PSA, the parties are entitled to fee awards in some circumstances. The PSA established that in all future litigation, the trial court would have the discretion to award attorney fees. It also provided that "any and all" legal expenses incurred through enforcing the PSA would be paid by the "party found at fault." Upon a breach, the breaching party would also "pay the attorney's fees and costs incurred by the other party in securing compliance herewith or incurred in connection with said breach."

The attorney fees issues that we must review encompass three iterations of this case. Along with the issues related to the marital residence, we must consider attorney fees associated with wife's prior appeals to this Court and to the Supreme Court of Virginia. *See Mills v. Mills*,

70 Va. App. 362 (2019) ("*Mills I*"), *petition for appeal denied*, No. 190781 (Va. Oct. 25, 2019) (order).

In 2018, husband filed a motion to show cause with the trial court alleging that wife violated three provisions in the PSA regarding life insurance, tax returns, and a "love and affection" clause. The trial court found wife in contempt for violating the three provisions. It ordered wife to obtain life insurance, pay husband a sum based on damages relating to his taxes, imposed a fine for wife's violation of the "love and affection" clause, and awarded husband attorney fees. Wife appealed, and we affirmed the trial court's holding of contempt for the life insurance and tax issues and awarded attorney fees to husband. *Id.* at 377-78, 384. However, we reversed the trial court's imposition of a fine for violating the "love and affection clause" and remanded with instructions that the trial court determine what portion of its award of attorney fees related to the litigation over this clause and deduct that amount from its award of attorney fees to husband. *Id.* at 382-84. The Supreme Court of Virginia refused wife's petition for appeal on October 25, 2019. On November 21, 2019, husband timely requested an attorney fee award from the trial court for his expenses incurred drafting a brief in opposition to wife's Supreme Court petition for appeal.

After the entry of the January 30 order, husband's counsel submitted an affidavit on his attorney fees from the previous appeal to this Court, following the guidance of *Mills I*. In conjunction, he presented expert testimony that his fee request was consistent with the expert's experience as an attorney. The expert reviewed the fee request and the explanation of attorney fees, which marked where the entries had been reduced. Husband's counsel also submitted timesheets, with an explanation that showed where he had subtracted time spent on the "love and affection" issue. He explained that wife had argued seven assignments of error and, at most, prevailed on one. Husband's brief dedicated only one page to that assignment of error. Thus,

husband's counsel subtracted all fees relating to that assignment of error, reduced all entries referring to the three issues by 33% and reduced all fee entries that referred to the overall brief by 14%.[1]

By final order of August 25, 2020, the trial court awarded wife attorney fees of $31,575. The court determined this amount by awarding wife all her requested attorney fees, then subtracting fees related to the failed settlement conference, husband's granted motion to compel discovery responses, costs related to the October 10, 2019 hearing, and costs associated with drafting the order reflecting the October 10, 2019 hearing. The trial court also awarded husband attorney fees of $17,730 "after reviewing [husband's] affidavits asking the Court to award attorney[] fees based on the Supreme Court appeal." The trial court offset that against wife's award, resulting in a final award of $13,845 for wife. By order, the court then found that there was "nothing further remaining to be done in this action," struck the matter from the docket of active cases, and dispensed with the parties' endorsement of the order under Rule 1:13. This appeal followed.

ANALYSIS

Combined, the parties assert ten assignments of error and cross-error. Four of these alleged errors generally relate to the proceedings over the marital residence, and five relate to the attorney fee awards.[2] We address husband's arguments relating to the marital residence first, and we address wife's arguments second. Finally, we address both parties' attorney fee arguments.

---

[1] Husband's counsel reached this percentage by assuming that he dedicated 7% of the brief to the one assignment of error relating to the "love and affection" clause then, out of caution, doubling that amount.

[2] The remaining assignment of error alleges that the trial court erred by dispensing with endorsement of the August 25 final order under Rule 1:13. A party may only challenge a trial court's compliance with Rule 1:13 if that party was prejudiced by the alleged failure. *Singh v. Mooney*, 261 Va. 48, 53 (2001) (citing *State Highway Comm'r v. Easley*, 215 Va. 197, 201-02

*I. Husband's Arguments Relating to the Sale of the Marital Residence*

Although husband asserts three assignments of error within this subject, the assignments of error reduce to one complaint: the trial court should not have considered the modification to the PSA when awarding the proceeds from the sale of the marital residence because wife did not properly bring the modification before the court. He alleges that the trial court could not enforce the modification because it was not part of the divorce decree, and he argues that declaratory judgment was not the appropriate remedy for her claim. We disagree on both counts. We find that the trial court could enforce the modification. We also find that declaratory judgment was appropriate.

*a. The trial court had enforcement jurisdiction over the modification to the PSA.*

At the time of the divorce, the PSA stated: "[U]nless the parties agree otherwise in writing, the Wife may continue to reside in and have exclusive use and possession of the marital residence until the youngest child begins attending college at which time the parties will decide the disposition of the property." It also specifically allowed for modifications to the PSA, provided the modifications were in writing and executed with the same formality as the PSA. Under those terms, husband and wife executed a formal modification agreement that transferred ownership rights to wife exclusively and that entitled wife to 100% of the net proceeds from the sale of the marital residence.

Code § 20-109.1 provides that "Where the court affirms, ratifies and incorporates by reference in its decree [a PSA], it shall be deemed for all purposes to be a term of the decree, and

_____

(1974)). Although wife alleges that she could not preserve her objections for appeal, she was able to communicate her objections to the trial court throughout the litigation and within 21 days of the entry of the final order. The trial court had an opportunity to rule intelligently on her objections at a time when it could correct an error, so we find that her arguments were preserved for appeal. *See Maxwell v. Commonwealth*, 287 Va. App. 258, 264-65 (2014) (discussing the purposes of the contemporaneous objection rule). Because wife was not prejudiced by the trial court's decision to dispense with endorsement, we need not consider this assignment of error.

enforceable in the same manner as any provision of such decree." Husband contends that this statutory provision only gives a trial court the ability to enforce the terms of the PSA as written at the time of the divorce, not future modifications. He argues that wife needed to bring a separate contract suit if she wanted to enforce the terms of the modification. But his argument ignores the fact that the terms of the original PSA allowed for modifications.

If the trial court could not enforce the modification to the PSA, then the modification terms in the PSA would be meaningless. And we will not interpret the PSA in a way that renders whole provisions meaningless. *See Jones v. Gates*, 68 Va. App. 100, 106 (2017) ("In reviewing a [PSA], the court must . . . 'giv[e] full effect to the words the parties actually used.'" (quoting *Layne v. Henderson*, 232 Va. 332, 337-38 (1986))). Moreover, a modification necessarily changes the original terms. *See Modification*, *Black's Law Dictionary* (11th ed. 2019). A modification made pursuant to an express modification provision within an agreement is a change to the ultimate requirements of the original agreement, brought about through the operation of the agreement itself. A modification is not a separate contract, though it may support a separate contract liability. Because a modification makes a change to the terms of the original agreement, properly enacted modifications to a PSA are enforceable in the same manner as the terms of the original PSA.

After entering a decree of divorce that affirms, ratifies, and incorporates the PSA, a trial court retains jurisdiction to enforce the terms of the divorce decree and the PSA. Code § 20-109.1. And when a PSA specifically authorizes modifications, a valid modification is enforceable as a term of the PSA. To hold otherwise is to hold that the portion of the original PSA authorizing modifications, here Section 13.5, is unenforceable. Thus, where the PSA expressly provides for such modifications, the trial court may exercise its jurisdiction to enforce

- 8 -

a valid modification to a PSA.[3]  In short, the trial court had jurisdiction to apply the terms of the modification in allocating the net proceeds of the sale of the marital residence.[4]

### b. The trial court had the authority to enter a declaratory judgment.

The power to make declaratory judgments is a statutorily granted power that allows trial courts to determine the rights of parties before a right is violated.  *Liberty Mut. Ins. Co. v. Bishop*, 211 Va. 414, 421 (1970); Code § 8.01-184.  It is appropriate for "[c]ontroversies involving the interpretation of deeds, wills, and other instruments of writing . . . ."  Code § 8.01-184.  By adjudicating the parties' rights before they act, the court decreases the likelihood of later remedial litigation.  *See Bishop*, 211 Va. at 421.  The decision to issue a declaratory judgment is a discretionary determination that must be exercised "with care and caution."  *See id.*  Declaratory judgment is not appropriate if another mode of proceeding is available.  *Id.*  It is also not appropriate when it "would be determinative of issues, rather than a construction of definite stated rights, status, or other relations, commonly expressed in written instruments."  *USAA Cas. Ins. Co. v. Randolph*, 255 Va. 342, 346 (1998).

At the time of wife's motion for declaratory judgment, the property had been sold and the proceeds were held in escrow in wife's counsel's trust account.  Wife's motion for declaratory judgment asked the court to determine each party's rights in the marital home, but that question was moot at the time she submitted the motion because the marital residence had already been sold.  Instead, the court needed to determine which party had the right to the proceeds from the sale under the modification to the PSA.

---

[3] This is not to suggest, however, that a trial court possesses equivalent authority to exercise its contempt powers to punish a breach of a modification when the modification is not incorporated into a decree.

[4] Because we find that the modification to the PSA was properly a part of the PSA, we need not address husband's argument that the trial court erred by not considering the terms of the unmodified PSA.

Husband argues that declaratory judgment was not appropriate because wife's motion alleged that husband breached the PSA by refusing to deed the property in her name as provided in the modification. Husband is correct that a breach of contract claim would resolve issues between the parties and that such claims should not be resolved through declaratory judgment. *See Randolph*, 255 Va. at 346. However, the breach of contract claim related only to the parties' rights in the marital residence. That claim was moot by the time wife filed the declaratory judgment action because the house had been sold. At the time of its decision, the trial court only needed to determine the parties' rights in the proceeds. Rather than allowing the special commissioners to disburse the proceeds from the sale of the marital residence and waiting until one party sued the other, the trial court preemptively reviewed the documents and determined who should receive the proceeds from the sale. The court did not err in doing so.

Husband also argues that the procedure used here deprived him of rights available in a contract case. First, we note that declaratory judgment is a remedy, not a cause of action. A contract issue may be decided in a declaratory judgment. Moreover, to the extent that husband argues he could not bring affirmative defenses, he abandoned his affirmative defenses at trial when he "advised the Court that [he] would no longer seek to pursue any affirmative defenses." He may not reassert those defenses on appeal. Code § 8.01-384 (establishing that arguments "expressly withdrawn" are not preserved for appeal). The trial court did not err in granting wife's motion for declaratory judgment.

## II. *Wife's Arguments Relating to the Sale of the Marital Residence*

Wife alleges that the trial court failed to act on four matters required by the order appointing the special commissioners and by the relevant statute.[5] Because she primarily argues

---

[5] Wife argues that those actions were necessary for the court to "give all the relief contemplated" and without those actions, there was no final order in this case. Rule 1:1.

that the trial court needed to enter an order specifically directing the special commissioners to release the funds from escrow, we address that first.

> *a. Wife's counsel was entitled to disburse the proceeds from the sale of the house to wife after the sale was completed, and wife is not entitled to interest for the time the funds were in escrow.*

Although the order appointing the special commissioners ("May 30 order") was slightly ambiguous, the trial court did not need to issue another order. We resolve any ambiguity here: wife's counsel may disburse the proceeds from the sale of the marital residence ("the funds") to wife under the trial court's declaratory judgment order from January 30, 2020.

As a reviewing court, we read the trial court's orders in context and do not "fix upon isolated statements . . . ." *Coward v. Wellmont Health Sys.*, 295 Va. 351, 363 n.11 (2018) (quoting *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977)). We also presume that the trial court correctly applied the law. *Rainey v. Rainey*, 74 Va. App. 359, 377 (2022). When we must consider the statutory scheme, we consider matters of statutory interpretation de novo. *Ruderman v. Pritchard*, 76 Va. App. 295, 302 (2022).

The May 30 order directed the commissioners to disburse the funds "pursuant to [the] court's forthcoming order upon a final determination of the enforceability of the parties' [PSA] and any modification thereto . . . ." It also specifically directed that wife's counsel should hold the funds in escrow while awaiting resolution of the case. The parties later convened for a hearing, where the trial court found that the modification was a valid part of the PSA and that

---

"[W]hen a trial court enters an order, or decree, in which a judgment is rendered for a party, unless that order expressly provides that the court retains jurisdiction . . . , the order renders a final judgment . . . ." *Super Fresh Food Mkts. of Va., Inc. v. Ruffin*, 263 Va. 555, 561 (2002). If a final order was not entered, then we do not have jurisdiction over the appeal. Yet wife is the appellant, and she does not make any jurisdictional arguments, nor does she request that we dismiss the appeal. Instead, she requests that we remand the case. In that light, we consider her arguments as non-jurisdictional arguments that the trial court erred by failing to take certain actions required by statute or its May 30 order.

wife was entitled to 100% of the proceeds from the sale of the marital residence. After the hearing, the court issued an order establishing that "[wife] is entitled to one hundred percent of the proceeds from the sale of the marital residence" and reserving the issue of attorney fees.

Wife argues that under Code § 8.01-96, the trial court needed to enter a separate order authorizing the special commissioners to release the funds. That code section requires that all special commissioners "account for and pay over as the court may direct all money that may come into his hands as such commissioner." Code § 8.01-96. Nothing in Code § 8.01-96 compels the form that the court's directions must take, and we are unaware of any case law that stands for wife's proposition. The statute only requires that the court direct the disposition of the funds, not that the court must enter a standalone order directing the commissioners.

As shown above, the court directed the commissioners to disburse the funds after it determined whether the modification to the PSA was enforceable and entered an order to that effect. Once the court entered the order on January 30, 2020, the special commissioner holding the funds, wife's counsel, could disburse the funds. Because that order ruled that wife was entitled to 100% of the proceeds from the sale of the house, wife's counsel was—and is— entitled to disburse 100% of the net proceeds to wife. In conjunction, we find that, contrary to wife's assertion, the trial court was not required to award wife interest for the time the funds were in escrow. That was not required by statute, nor was it required by the May 30 order.

> b. *The trial court erred by failing to determine the amount that husband must reimburse wife for the costs related to the special commissioners and by failing to determine the amount of commission due to the special commissioners.*

Wife also argues that the trial court erred by failing to require husband to reimburse her for her costs associated with the sale by the special commissioners and by failing to award the statutorily authorized commission to the special commissioners.

The May 30 order stated that the non-prevailing party would pay the costs unless "otherwise allocated by the court upon consideration of the equities of the case at such final disposition." The order determining that wife was the prevailing party did not award the costs of the special commissioners, nor did the next order awarding attorney fees. As stated above, we do not read the trial court's orders in isolation. *See Coward*, 295 Va. at 363 n.11. Because the trial court failed to "otherwise allocate" the costs of the special commissioners, the non-prevailing party, husband, must pay those costs. On remand, the trial court must take evidence on this issue and determine the amount that husband must reimburse wife.

Wife next argues that the trial court needed to award a commission to the special commissioners for their work selling the marital residence and collecting the proceeds. The May 30 order stated that the costs would include "any commission authorized by statute." Code § 8.01-109 allows for a five percent commission on the proceeds up to $100,000 and a two percent commission on the rest of the proceeds. It states that "If the sale is made by one commissioner or officer and the proceeds collected by another, the court under whose decree they acted shall apportion the commission between them as may be just." Code § 8.01-109. We may fairly conclude that by including "any commission authorized by statute," the trial court intended that the special commissioners would receive their commission. *See id.* But even if we reach that conclusion, the orders do not explain how that commission should be divided. And because the order directed both commissioners to sell the property but directed only one commissioner to collect the proceeds, the trial court needed to divide the commission "as may be just." *Id.* Because the statute explicitly directed the trial court to act, we cannot rely on the trial court's silence to assume that it properly applied the law. On remand, the trial court must determine the amount due to the commissioners.

### III. The Attorney Fee Awards

In the final order, the trial court awarded wife attorney fees as the prevailing party in the immediate litigation and awarded husband attorney fees as the prevailing party in wife's previous appeals. The court awarded wife $31,575 and husband $17,730. The court then offset husband's fee award against wife's award and ordered husband to pay wife $13,845.[6] We review each fee award for an abuse of discretion. *See Lambert v. Sea Oats Condo. Ass'n*, 293 Va. 245, 252 (2017).

A trial court abuses its discretion "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment." *Id.* at 253 (quoting *Manchester Oaks Homeowner's Ass'n v. Batt*, 284 Va. 409, 429 (2012)).

### a. Wife was entitled to all reasonable fees incurred enforcing the modification to the PSA.

In fashioning the fee award, the trial court granted wife attorney fees incurred by enforcing the modification to the PSA, minus fees incurred due to the failed settlement conference; fees incurred in relation to the October 10 hearing about the declaratory judgment motion; and fees incurred in connection with a motion to compel discovery responses from husband. Husband argues that wife was not entitled to a fee award under the PSA because the modification was not a part of the PSA. As explained above, the modification was a valid amendment to the PSA. Thus, wife was entitled to an award for all fees incurred enforcing the

---

[6] Husband argues that the trial court erred by offsetting the fee award rather than ordering each party to pay the other's full award because that contradicted this Court's mandate to award husband appellate attorney fees. Husband misunderstands this Court's order. We did not police the form that the fees must take, we merely required that husband is compensated for his time spent successfully defending against wife's appeal. *See Mills I*, 70 Va. App. at 384. His time was calculated, and his fee was awarded. The trial court's decision to then offset that fee against an award to wife did not contradict our mandate, and it was not error.

PSA and the modification to the PSA. Husband further argues that wife was only entitled to a reasonable fee award. On the other end, wife argues that the trial court erred by subtracting from her fee award certain expenses because she was entitled to *all* expenses incurred as part of enforcing the PSA. Wife does not allege that her fee award was reasonable; she instead asserts that parties are only entitled to reasonable fee awards if the contract specifically uses the word "reasonable."

We recently recognized that "[a] prevailing party entitled by law to an award of attorney fees has the burden of proving 'that the requested fees are reasonable and that they were necessary.'" *Moncrieffe v. Deno*, 76 Va. App. 488, 497 (2023) (alteration in original) (quoting *Sidya v. World Telecom Exch. Commc'ns, LLC*, 301 Va. 31, 46 (2022)); *see also Chawla v. BurgerBusters, Inc.*, 255 Va. 616, 623 (1998) ("The party claiming the legal fees has the burden of proving *prima facie* that the fees are reasonable and were necessary."). In *Ulloa v. QSP, Inc.*, 271 Va. 72, 76 (2006), the Supreme Court considered a contract with the provision "if I violate this Agreement . . . I will be responsible for all attorneys' fees, costs and expenses incurred by QSP by reason of any action relating to this Agreement." The Supreme Court found that the individual violated the agreement and had the burden to "pay reasonable attorneys' fees 'incurred by QSP in any action relating to this agreement.'" *Id.* at 81.

Here, the parties agreed that if a party was compelled to enforce the agreement, the other party must pay for "any and all expenses incurred, including but not limited to, attorney's fees and costs . . . ." The PSA does not specify that the fees must be reasonable. However, we follow the Supreme Court's guidance and find that the PSA, like any contract, implicitly required that the attorney fees awarded be reasonable. *See id.*; *see also Chawla*, 255 Va. at 619, 621 (holding that the prevailing party is entitled to "reasonable" attorney fees where the contract awarded "all

- 15 -

. . . attorney fees"). Husband is correct that wife was only entitled to all reasonable attorney fees incurred through enforcing the PSA.[7]

When the trial court fashioned the fee award, it granted wife all fees incurred by enforcing the PSA, minus certain fees it identified as excepted. Although husband argues that the fee award was unreasonable, "a trial court is presumed to apply the law correctly," and we find no basis to disturb the trial court's fee award.[8] *Shenk v. Shenk*, 39 Va. App. 161, 169 (2002).

      b. *Husband was entitled to his attorney fees incurred drafting a brief in opposition to wife's petition for appeal to the Supreme Court of Virginia.*

The trial court granted husband an attorney fee award for expenses incurred defending against wife's unsuccessful appeal to the Supreme Court of Virginia. Under Rule 5:35, "[a] prevailing appellee who was awarded attorney fees and costs in the circuit court may [apply] in the circuit court for additional fees and costs incurred on appeal . . . ." The application must be filed within 30 days after the entry of a final appellate judgment disposing of the matter. *See*

---

[7] In support of her argument, wife cites to the proposition that "[w]here contracts are 'plain upon their face, they are to be construed as written, and the language used is to be taken in its ordinary significance unless it appears from the context it was not so intended." *Dowling v. Rowan*, 270 Va. 510, 516 (2005). But given the relevant case law, it appears that contracts awarding "all attorney fees" contain an inherent presumption that the fee award will be reasonable, unless the parties clearly and expressly intend otherwise. This would be the "ordinary significance" assigned to a provision addressing attorney fees. And this conclusion finds support in Justice Holmes's "common sense" approach to fashioning common-law rules of contract. *Globe Refine Co. v. Landa Cotton Oil Co.*, 190 U.S. 540, 543 (1903) (explaining that "the common rules have been worked out by common sense which has established what the parties probably would have [worked out] if they had spoken about the matter"). Few if any contracting parties would agree to a fee-shifting provision in which the losing party must pay *unreasonable* attorney fees to the prevailing party. *Accord* 1 Robert L. Rossi, *Attorneys' Fees* § 9:39 (3d ed. 2022) ("[C]ourts have frequently held that the fee awarded must be reasonable even in the absence of a specific language requiring that the fee be reasonable.").

[8] Wife also argues that the trial court arbitrarily reduced her fee award by excluding certain fees incurred by enforcing the PSA. On remand, the trial court may consider whether those excluded fees were incurred by enforcing the PSA.

- 16 -

Rules 5:35, 1:1A.  Contrary to wife's assertion that there was no final appellate judgment, the Supreme Court order denying the petition was that judgment because it disposed of the entire matter.  *See* Rule 1:1A.  Within 30 days of that judgment, husband applied for a fee award for his brief in opposition to wife's petition.  Husband met the requirements for requesting a fee award, and the trial court did not err by granting that petition and awarding husband attorney fees in connection with wife's appeal to the Supreme Court of Virginia.[9]

    *c. The trial court properly calculated husband's fee award pursuant to the previous appeal to this Court.*

As instructed in *Mills I*, the trial court also granted husband's request for a fee award for fees incurred defending against wife's previous appeal to this Court.  *See Mills I*, 70 Va. App. at 384 (remanding the case to the trial court for it to grant a partial fee award to husband).  Wife contests the trial court's method for determining the amount of the fee award, arguing that husband could not prove the amount he should receive.

In *Mills I* we remanded the matter of appellate fee awards to the trial court "to take evidence on the question of attorney[] fees on appeal and award husband the reasonable and necessary attorney[] fees he incurred on appeal related to Sections 6.1 and 8.2 of the PSA." *Mills I*, 70 Va. App. at 384.  Wife argues that husband did not meet his burden of proof for showing which expenses were incurred under those sections.

Whether a trial court properly awarded a partial appellate fee award is a matter of first impression for this Court.  We are guided by three considerations.  First, we reiterate that

---

[9] Wife further argues that Rule 5:35(d) precluded husband's attorney fee award because he did not file a notarized bill of costs with the clerk of the Supreme Court within 14 days of the decision.  But husband was not awarded costs in connection with the petition to the Supreme Court.  The record shows that, in connection with the petition to the Supreme Court, husband incurred $3,360 in attorney fees and $377.36 in other costs.  The trial court awarded him $3,360.  Thus, whether husband filed a notarized bill of costs is immaterial because the trial court only awarded his attorney fees, not his costs.

attorney fee awards are reviewed for an abuse of discretion. *Lambert*, 293 Va. at 252. That standard includes fee requests that are granted on appeal and calculated on remand. Second, mathematical certainty is impossible. *Brandau v. Brandau*, 52 Va. App. 632, 643 (2008) ("We accept that mathematical certitude is an illusory goal when attempting to segregate legal fees between discrete arguments."). Third, a fee request "should not result in a second major litigation." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

To calculate the partial fee award, husband's counsel submitted his timesheets for his work spent on *Mills I*. He described his calculation for a reduced fee award as follows:

> Where the violation of the love and affection clause was the only entry on the timesheet, the fee was completely erased. Where the violation of the love and affection clause was included with the other two (2) violations, the fee was reduced by 33%.
>
>  . . . .
>
> [Wife] assigned seven (7) errors to the Court in a thirty (30) page brief, and only 1/2 of one (1) assignment of error was found to have any merit. A review of [husband's] Reply Brief shows that approximately one (1) page of his fifteen (15) page brief was spent addressing the argument on which [wife] prevailed. . . . Statistically, [husband] prevailed on over 86% of his arguments, while [wife] was successful on one-half of 14%, or seven percent (7%) of her appeal.
>
> When an entry refers to work on the overall brief, the fee is reduced by at least 14% (and not 7%) to give [wife] the benefit of the doubt.

This calculation was accepted by the trial court, which then granted husband's entire reduced fee request. Wife opposed this calculation, arguing that "absent a detailed itemization of the time spent on each of the relevant sections considered by the court, the court is without any evidence at all on which to base an award of attorney's fees." Wife does not point to any authority that requires such a "detailed itemization." In fact, the relevant principles point in the other direction because "mathematical certitude is an illusory goal." *Brandau*, 52 Va. App. at 643. Wife asks

us to hold that the trial court erred by not requiring husband's counsel to produce a highly detailed timesheet that proves he spent 33% of his time on one of three issues. We decline her invitation because requiring husband's counsel to account for the minutiae of every hour spent on the appeal would make the fee award needlessly complicated and reminiscent of a renewed litigation, in contravention of the principles outlined in *Brandau*.

There is no evidence that husband's counsel was not honest in his fee request, and his reductions are roughly equivalent to the proportion of *Mills I* which related to the Section 2.3 issue. We find that the trial court did not abuse its discretion by accepting husband's counsel's calculations as reasonable estimates of counsel's work.

### d. Wife is entitled to reasonable attorney fees incurred on appeal that were necessary to enforce the PSA.

In her reply brief, wife requests "any and all attorney[] fees and costs incurred in bringing this appeal and in defending against appellee's additional assignments of error." The PSA provides that she is entitled to "any and all" fees incurred through enforcing the PSA, but that other attorney fee awards are within the Court's discretion. Wife's appeal was necessary to enforce the part of the PSA granting her "any and all" attorney fees for enforcing the PSA, and we must grant her reasonable attorney fees incurred in connection with that assignment of error, outlined in section III(a) above. Wife's other successful assignments of error related to the order appointing the special commissioners. As those assignments of error were not related to the PSA, we decline to award her attorney fees on that subject. *See* Rule 5A:30. Wife's work defending against husband's additional assignments of error was also incurred "enforcing" the PSA, thus she is entitled to those attorney fees. We remand for the trial court to determine and award wife's reasonable attorney fees incurred enforcing the PSA on appeal.

CONCLUSION

For the reasons explained above, the trial court's judgment is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. Specifically, we remand for the trial court to determine the amount due to the special commissioners, to allocate the costs of the special commissioners, and to award wife a reasonable fee award for enforcing the PSA, including on appeal.

*Affirmed in part, reversed in part, and remanded.*